## 35302. DALLY *v.* ARNOLD.

Decided January 27, 1955.

*Orrin Roberts*, for plaintiff in error.

*A. M. Kelly, Wm. L. Preston*, contra.

Quillian, J. H. M. Arnold applied to the Ordinary of Walton County to appoint processioners to survey and mark anew the

north line of his property, said line separating his property from that owned by Mrs. Margarett B. Dally. After due notice had been given to Mrs. Dally, the processioners proceeded to survey and mark anew the line as contended for by the applicant. Mrs. Dally filed her protest and appealed to the superior court; and, upon trial of the issues made thereby, the verdict was in favor of the line established by the processioners. The protestant filed a motion for new trial which she amended by adding one special ground, the trial court overruled that motion, and the exception here is to this ruling.

The applicant, Arnold, contended that the line that ran along the northern border of his lands, known as the Hinton place, and the southern boundary of Mrs. Dally's lands, known as the Hopkins place from a certain point at its beginning, followed the course of N 87½ W 56.90 through the lands it divided. The protestant, Mrs. Dally, insisted in her formal protest filed in the case, that the true line began at the same point and ran in another direction than that contended for by the applicant; that the true line began at the point mentioned and followed the course S 76½ E 30.50, which, of course, is the same course and distance as N 76½ W 30.50, surveyed from a point at its opposite end.

Their contentions are best understood by a plat showing the respective lines contended for by each of the parties, together with the shape and size of the strip of land lying between them. This plat appears from the record as here exhibited:

The strip of land in controversy as shown by this plat consists of eight and one-tenth acres. Both applicant and protestant claimed to have been in possession of the 8.1 acres of land lying between the disputed line for such length of time and under such circumstances as would under color of title ripen into prescriptive title.

There is considerable evidence in the record tending to support the contentions of each party in regard to this issue.

A careful review of the evidence and thorough examination of the record constrains us to hold that the evidence authorized the verdict, and that there was no error of law requiring the granting of a new trial.

The movant in the single ground of the amended motion for new trial, complains that the court charged the jury as follows: "I charge you that the burden of proof in this case is on Mr. Arnold to make out a prima facie case; that when he makes this case out by showing the processioners' return and the plat and when he has done that, then the burden shifts over to the defendant in this case, Mrs. Dally, and she must sustain the burden by a preponderance of the evidence. I charge you, in order to make out a prima facie case, Mr. Arnold must show the line was run by the processioners, that the plat was made thereof and that it was returned into the court of ordinary as required by law. Then when he had done that, the burden shifts to the defendant in this case, that is Mrs. Dally, to show the line established by the processioners is not the true line."

The criticism of the charge was that it placed upon the respondent, Mrs. Dally, the burden of showing that her contentions were true by a preponderance of the evidence; and that the burden should not be placed upon her for the reason that the law placed the burden upon the plaintiff to prove his case by a preponderance of the evidence.

The exception is not well taken for the reason that, where the applicant and respondent in proceedings as in this case contend that the line follows a specific course shown in their respective pleadings, or evidence, and the issue is whether the line runs along the course contended for by the applicant or that which the respondent maintains is correct, each party has the burden throughout the trial to prove the correctness of his contentions.

It is said in *Jarrard* v. *Wildes*, 87 *Ga. App.* 30 (73 S. E. 2d 116): "So, the issue for determination by the jury was whether the line set up by the processioners and surveyor, and as contended for by the applicant, Wildes, was the true dividing line between Land Lots 106 and 125, or whether the line specified in the protest filed by W. C. Jarrard, S. J. Mullis and A. P. Wade was the correct dividing line between the lands of the parties, as contended by the protestants. Consequently, the burden was on the applicant to sustain his contention by a preponderance of the evidence as to the line claimed by him before he would be entitled to a verdict, and likewise, the burden was on the protestants to sustain their contention as to the correctness of the line claimed by them in their protest, before they would be entitled to a verdict setting up that line. The applicant was seeking to have one line set up, and the protestants were seeking to have an entirely different line set up as the true dividing line between the lands of the parties. These were the issues to be tried and determined by the jury, as above stated. No harmful error is shown by this ground of the motion." It is unquestionably the law that the burden of proof is ordinarily fixed by the pleadings, and does not shift from one party to another. However, the burden of evidence, in reference to some or all the issues in the case, at various stages of the trial shifts from one to the other. Moreover this court in a recent case held that to charge the jury in almost the identical language employed in the charge under review—instructing the jury as to the precise principle of law here involved, and in circumstances so similar to those presented by the evidence in the instant case that there is really no difference in the practical situation in the two cases—was not error. *Payne* v. *Green*, 84 *Ga. App.* 689 (67 S. E. 2d 195).

The applicant was not estopped to deny that the line was located as claimed by the respondent on account of having made a deed conveying to her the lands lying adjacent to his, for the reason that the deed did not so describe the lands as to fix the line at any particular place, or show that it ran along the course the respondent contended.

We recognize the principle that there must be a valid return before a protest can be filed in processioning proceedings, and that the return and protest make the issue in such cases. Con-

sequently, where no legal return is made, there is no issue to try in an appeal to the superior court, and no motion that the court should dismiss the appeal.

We have also considered the question, not made by the motion for new trial or raised in the briefs filed by the litigants, that a return of processioners which simply represents lines appearing in deeds from plats, and that does not represent a line physically marked upon the ground itself does not constituute a legal return of processioners. Where, as in this case, there was no motion to dismiss the processioning proceedings in the lower court, and the only issue raised by the protestant was whether the line marked by the processioners, or other line, was correct, no question as to the legality or sufficiency of the processioners' return is for consideration in the appellate court. *Rattaree v. Morrow*, 771 *Ga.* 528 (2); *Long v. Robertson*, 41 *Ga. App.* 712 (1) (154 S. E. 464).

The protestant in this case does relate that her possession in this case was not considered by the processioners, but the evidence is silent as to any evidence of such possession having been offered for consideration by the processioners. The only processioner who testified as to whether the question was brought to the processioners' attention testified: "I don't recall that Mr. Dally claimed to have been in possession of it for twenty-five was mentioned to us, when we run the line it wasn't considered." Mr. Dally acted on behalf of his wife when the processioners marked the line.

The protestant did not even intimate any challenge to the legality of the return predicated upon the contention that the processioners did not consider physical objects.

If there had been any issue in the trial court as to the legality of the processioners' return (there was no intimation of such issue in the trial court), and if such issue had been preserved by exception to the order denying a motion to dismiss the proceeding in the trial court (no such exception was taken), the plaintiff in error, protestant in the trial court, would have abandoned it, because there was no suggestion of such an exception to the judgment of the trial court in argument or brief in this court. *Savannah, Thunderbolt &c. Ry. v. Fennell*, 100 *Ga.* 474 (2) (28 S. E. 437).

Moreover, explicit, positive, and unequivocal testimony of the processioners and surveyor was that the processioners followed the direction of Code § 85-1601 and considered natural landmarks.

The testimony referred to was, Joe Williams, the surveyor, testified: "In running this line the best evidence that looked like an old line was before you got in the woods, it looked like there had been a pine row: it started right down beside one piece of woods and crossed a little open space and then into another piece of woods. I think that was some evidence of the old line."

Josiah Blasingame, a processioner, testified in part: "When the surveyor ran that line we all walked along through the woods, Mr. Moore, Mr. Collier and myself, and we could see some natural evidence of a line when we got in there and that was the line the surveyor was running." He further testified: "We all agreed as to the starting point there on the road. In my negotiations as representing the Bank of Jersey, it was not my intention to sell any part of the Hinton land and I did not sell any of it. The only line I pointed out, I was just trying to point out the correct line, and marking the old line anew; we did this and made our return to the ordinary."

Under this evidence, the holdings in the cases of *Amos* v. *Parker,* 88 *Ga.* 754 (16 S. E. 200), *Smith* v. *Clemons,* 71 *Ga. App.* 589 (31 S. E. 2d 621), *Anthony* v. *Wright,* 78 *Ga. App.* 425 (46 S. E. 2d 194), have no bearing on what is here held, for the very good reasons: first, that, as stated, the legality of the processioners' return was not challenged in the trial court; and for the further reason that the evidence in this case conclusively shows that the processioners marked anew the old line, having before them physical evidence as to the location of the line, and that the processioners considered this evidence.

Of course the processioners had the right to consult the plat, and consider it together with the physical land marks. *Booker* v. *Booker,* 41 *Ga. App.* 380, 381 (153 S. E. 94); *Hill* v. *Snellings,* 41 *Ga. App.* 585 (1) (154 S. E. 156).

*Judgment affirmed. Gardner, P. J., Townsend, Carlisle, and Nichols, JJ., concur. Felton, C. J., dissents.*

FELTON, C. J., dissenting. I dissent from the judgment of affirmance.

Joe Williams, the surveyor, testified in part as follows: "There were three processioners that met out there in this case and I was there. The line was fixed at that time, the processioners started at the same point, about the only point that was known to be on this original line between these two tracts on the road and used an old plat in running north 87½ west from the road back across this tract of land. This Dally tract is 510 and a fraction acres according to this plat. On this plat this line right here was the processioners' line and this is the road on here. The line between the places, according to this old plat, runs north 87½ west degrees. The line as fixed by the processioners is the same direction, north 87½ west. . . In running this line out here it run, I guess, two-thirds of the way through these woods. In running this line the best evidence that looked like an old line was before you got in the woods, it looked like there had been a pine row; it started right down beside one piece of woods and crossed a little open space and then into another piece of woods. I think that was some evidence of the old line. . . This old plat is dated in 1878 and looks like it represents the land there."

Josiah Blasingame, a processioner, testified in part: "When the surveyor ran that line we all walked along through the woods, Mr. Moore, Mr. Collier and myself, and we could see some natural evidence of a line when we got in there and that was the line the surveyor was running."

Eugene Moore, a processioner, testified in part: "We walked with the surveyor from the road along the line of the disputed area and there were places along that line that appeared to be an old hedge row or turn row. We run that line according to the best plat we had available. When we run the line we didn't know who was in possession; we had never heard of this Hinton place and Hopkin place. We just run the line. Up on the road there was a point accepted by all the parties concerned was my understanding. The difference in the line was on the south side of the road and the dispute was from the road down to the creek on the south side of the road. I guess it would be about eight acres. The line was a straight line continuing the line north of the road. We had a copy of a plat and adopted that line as being the true line."

Curtis H. Collier, a processioner, testified in part: "It was mutual decision to run that line a straight line according to a copy of a plat we had and the surveyor ran it the same as it was on this old plat. We did not consider the fact Mrs. Dally claimed she owned it for all these years and had been in possession of it."

I think the evidence conclusively shows that the processioners did not proceed according to law in the marking of the line. They merely took a plat made in 1878 and, beginning at an agreed point, ran a line according to the courses and distances shown on that plat. "They [processioners] seek and find lines already existing, but can not bring into existence any which have not been before designated on the surface of the earth. Lines merely drawn on paper or in the minds of contracting parties, are not ready for the search or services of processioners." *Amos* v. *Parker*, 88 *Ga.* 754 (16 S. E. 200). Also, see *Smith* v. *Clemons*, 71 *Ga. App.* 589 (31 S. E. 2d 621); *Anthony* v. *Wright*, 78 *Ga. App.* 425 (46 S. E. 2d 194). There is some evidence that the processioners saw some evidence of *an* existing line, and these physical markings, if used, may have been sufficient to legally mark a line; however, such evidence was not used by the processioners in marking the line, but was incidentally observed by them while they were marking a line based on a compass course taken from the 1878 plat.

The rulings in *Rattaree* v. *Morrow*, 71 *Ga.* 528 and *Long* v. *Robertson*, 41 *Ga. App.* 712 (154 S. E. 464), cited by the majority, have no application to this case for the reason that there was nothing to show that the processioners did not have jurisdiction, either on the face of the record or from the evidence, or anything to show that the protestant waived the right to contend that the line run by the processioners was not the true line as contended in the protest.

The evidence demanded a finding against the line run by the processioners.